UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.P. (a minor); ROBIN MAMMEN and LARRY MAMMEN individually and as Guardian Ad Litem for A.P.,<br><br>  Plaintiffs,<br><br>     v.<br><br>COMMUNITY CARE LICENSING, et al.,<br><br>  Defendants. | No.  2:13-cv-01588 JAM AC<br><br>**ORDER GRANTING DEFENDANT COMMUNITY CARE LICENSING'S MOTION TO DISMISS** |

Defendant Community Care Licensing ("CCL")brings this Motion to Dismiss the fourth and fifth causes of action for discrimination and retaliation in Plaintiffs' Third Amended Complaint ("TAC")under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, CCL's Motion to Dismiss is GRANTED WITH PREJUDICE.[1]

///

///

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).  The hearing was scheduled for August 20, 2014.

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Plaintiffs A.P., Robin Mammen and Larry Mammen filed their original Complaint on August 1, 2013, against CCL and several other defendants. Plaintiffs filed a First Amended Complaint and then a Second Amended Complaint ("SAC").  On June 9, 2014, the Court dismissed with leave to amend several causes of action in the Second Amended Complaint against CCL and Defendant Michelle Wong, and dismissed without leave to amend a single cause of action against both CCL and Defendant Wong.

Plaintiffs filed the TAC shortly thereafter.  The TAC includes the following two causes of action against CCL which are the subject of this motion to dismiss: a discrimination claim alleging a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and a retaliation claim alleging a Title II violation of the Americans with Disabilities Act ("ADA), 42 U.S.C. § 12132. The remaining claims in the TAC are asserted against other named defendants and not CCL. For this reason the Court need not address the first, second, third, sixth, seventh, eighth and ninth causes of action in the TAC.

Plaintiffs allege that A.P. was removed from his birth parents at a young age due to abuse and neglect.  TAC ¶ 15.  On November 2, 2009, at age 3, A.P. was placed in the Mammen's home, a certified Foster home of the St. Francis Foster Family Agency.  Id. ¶¶ 25-26.  On November 17, 2009, the Juvenile Court suspended A.P.'s biological parents' rights and Ms. Mammen was appointed A.P.'s educational representative.  Id. ¶ 27.  Between November 2009 and August 2011, the Mammens sought and obtained medical evaluations and treatments for A.P.  Id. ¶ 28.  In 2009, A.P. was

1  diagnosed with Autism and was later diagnosed with Sensory
2  Integration Disorder, Moderate Intellectual Disability, and ADHD.
3  Id. ¶ 21.
4      On August 17, 2011, reunification services were terminated
5  due to failures on the part of A.P.'s biological parents, and in
6  September 2011, the Mammens sought to make A.P.'s home with them
7  permanent.  Id. ¶ 37.  A.P.'s case was transferred to a different
8  unit in the County, the adoptions unit.  Id. ¶ 39.  The County
9  pursued institutionalization of A.P.  Id. ¶¶ 40-41.
10     On September 29, 2011, the Mammens filed a grievance with
11 the Sacramento County disability compliance office alleging
12 violations of the ADA and Olmstead v. L.C., 527 U.S. 581 (1999).
13 Id. ¶ 43.  They filed an amended grievance on October 13, 2011.
14 Id. ¶ 44.  The same day, Defendant Stephanie Lynch emailed
15 another County Defendant about her concern that the Mammens were
16 "wrapping [A.P.] like a burrito."  Id. ¶ 45.  Defendant Lynch
17 contacted CCL, a division of the California Department of Social
18 Services which licenses and oversees foster family agencies.
19 Defendant Lynch told CCL "this cannot be done" and CCL confirmed
20 that the wrapping technique was a personal rights' violation.
21 Id.  On November 8, 2011, a CCL investigator visited the Mammens
22 to investigate the allegation they had received that the "foster
23 parent [was] violating the personal rights of foster child."  Id.
24 ¶ 54.  The investigator presented findings that "the foster
25 parent admitted she used wrapping technique to calm her child."
26 Id.  Ms. Mammen was cited under 22 California Code of Regulation
27 ("CCR") § 89372 with a finding of a personal rights' violation of
28 A.P.  Id.  This CCL violation was raised as a concern in A.P.'s

adoption process, and resulted in a delay in the process.  Id. ¶¶ 67-68.  Plaintiffs adopted A.P. on October 31, 2012.  Id. ¶ 15.

## II.  OPINION

### A.  Discrimination

Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability.  42 U.S.C. § 12132 (1994); Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).  To state a claim, a plaintiff must allege the following elements:

> (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination was by reason of his disability.*
> Weinreich, 114 F.3d at 978 (emphasis in original).

Similarly, under Section 504 of the Rehabilitation Act, a plaintiff must show: "(1) he is an 'individual with a disability'; (2) he is 'otherwise qualified' to receive the benefit; (3) he was denied the benefits of the program *solely by reason of his disability;* and (4) the program receives federal financial assistance."  Id. (citing 29 U.S.C. § 794) (emphasis in original).  Because Title II of the ADA was modeled on Section 504, "courts have applied the same analysis to claims brought under both statutes." Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999) (citations omitted).

Defendant argues that Plaintiffs have failed to allege that

1  CCL discriminated against A.P. by reason of his disability.  Mot.
2  at 12.  Rather, Defendant argues, CCL was required by statute to
3  find a personal rights' violation for conduct that violated CCR
4  § 89475.2 and, "[r]egardless of whether A.P. had a disability,
5  the Mammens' use of the wrapping technique would have violated
6  [the terms of the CCR]."  Mot. at 13.  Plaintiffs respond that
7  "[b]ut for A.P.'s severe disability, the [wrapping technique]
8  would have been unnecessary and Ms. Mammen would never have been
9  cited by CCL."  Opp. at 8.  Therefore, Plaintiffs argue, "it
10 categorically is because of A.P.'s disability that the State took
11 the action it did."  Opp. at 8.

12     Plaintiffs' use of a "but for" causation test is
13 unconvincing.  To establish that A.P. was denied services "by
14 reason of his disability," Plaintiffs must allege that the
15 disability was a "motivating factor" in the CCL citation.  <u>Martin
16 v. California Dep't of Veterans Affairs</u>, 560 F.3d 1042, 1048 (9th
17 Cir. 2009).  Thus, the "but for" causation test is far too broad:
18 not all "but for" causes are also "motivating factors."  For
19 example, "but for" A.P.'s residing in California, CCL would not
20 have been prompted to investigate the wrapping technique.  Of
21 course, it cannot be said that CCL's finding of a personal
22 rights' violation was "by reason of" A.P.'s residence in
23 California.

24     Rather, the "motivating factor" behind CCL's finding of a
25 personal rights' violation was the fact that the wrapping
26 technique violated the regulations it was legally required to
27 enforce.  Under California Health and Safety Code § 1538(c), CCL
28 was required to make an onsite inspection of the Mammens' home

after it was notified of the complaint by County Defendant Lynch. The regulations that CCL was required to apply include the provision that "[u]nder no circumstances shall postural supports include tying, depriving, or limiting a 'child' from use of hands or feet." Cal. Code of Regs. § 89475.2. The wrapping technique is a direct violation of § 89475.2's prohibition on limiting a child's use of his hands or feet. Accordingly, CCL's finding of a personal rights' violation was not "by reason of" A.P.'s disability: rather, CCL would have made the same statutorily-required finding regardless of whether or not A.P. had a disability.

Plaintiffs' attempt to analogize the wrapping technique to a "belted high chair [or] a seat belt" misreads the relevant regulations. Opp. at 7. Plaintiffs argue that § 89475.2, on its face, would prohibit the use of any "restraints" on a child, including belted high chairs or seat belts. Opp. at 7. Therefore, Plaintiffs argue, CCL's decision to selectively enforce the regulation in this case can only be explained by a discriminatory animus. Opp. at 7. In relevant part, § 89475.2 provides: "[e]xcept for postural supports and protective devices as provided in this section, the caregiver shall not restrain or use any restraining devices on a 'child.'" Cal. Code Regs. § 89475.2. Elsewhere in the Code, a "restraining device" is defined as "any physical or mechanical item that is attached or next to the body of a "child" that a "child" cannot remove easily and keeps the "child" from moving freely *as specified in Section 89475.2, Postural Supports and Protective Devices*." Cal. Code Regs.

6

§ 89201 (emphasis added). Although inartfully drafted, the cross-reference to § 89475.2 suggests that "restraining devices" are only prohibited if they run afoul of § 89475.2. Belted high chairs or seat belts do not violate the terms of § 89475.2; conversely, the wrapping technique violates § 89475.2's prohibition on restraining devices that deprive or limit a child's use of his hands or feet. Therefore, § 89475.2 did not grant CCL the wide discretion argued by Plaintiffs, and CCL did not selectively enforce the regulations in this case.

Plaintiffs' argument that Defendant's conduct violated Olmstead and "as a result [its] actions must be deemed to have occurred by reason of A.P.'s disability" also fails. In Olmstead v. L.C. ex rel. Zimring, the Supreme Court held that "unjustified isolation" in an institution can, in certain circumstances, be "properly regarded as discrimination based on disability." 527 U.S. 581, 597 (1999). As Defendant notes, however, "[a]ll references to any Olmstead violations in Plaintiff's TAC are [only] directed against County Defendant." Reply at 7. In its June 9, 2014 Order, this Court rejected Plaintiffs' Olmstead argument on precisely these grounds: "there are no allegations against [CCL] for violation of Olmstead integration in the SAC; all Olmstead allegations are against the County Defendants." Order at 6. Therefore, even assuming Olmstead is relevant to this case, there are no allegations to support an inference that the State Defendant committed an Olmstead violation. Plaintiffs have not remedied this deficiency in the TAC.

Plaintiffs' remaining allegations as to CCL are also insufficient to state a claim for discrimination. Plaintiffs

7

make the following three conclusory allegations: (1) "Defendants County and CCL took the position that A.P. should be denied a permanent home based on his disability, thus advocating for a deprivation solely based on A.P.'s disability"; (2) CCL "took actions to intimidate Mrs. Mammen for trying to protect A.P.'s federal rights"; and (3) "CCL's actions violated the parents' rights in that it interfered with their ability to care for and treat their adoptive son."  TAC ¶¶ 132, 141, 142.  Absent any other factual support in the TAC, these allegations are threadbare assertions that CCL engaged in discrimination.  Post-Twombly and Iqbal, such "legal conclusions" are not entitled to the presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 556 U.S. 662, 570 (2007)).  The Court finds that Plaintiffs have failed to state a claim for discrimination in violation of the ADA or section 504 of the Rehabilitation Act and dismisses this cause of action as to CCL.

  B. Retaliation

Plaintiffs' claim for retaliation must be dismissed, according to CCL, because Plaintiffs have failed to adequately allege a causal link between a protected activity and an adverse action taken by Defendant.  Mot. at 16.  Specifically, CCL argues that Plaintiffs have made substantially the same allegations in the TAC as those made in the SAC, which the Court found insufficient to state a claim for retaliation.  Mot. at 17. Plaintiffs argue that the temporal proximity between the Mammen's grievance and the CCL investigation warrants a reasonable inference that one event caused the other.  Opp. at 13.

An individual who has advocated on behalf of a person with a disability has standing to assert a claim for retaliation under the Rehabilitation Act and Title II of the ADA. Barker v. Riverside Cnty. Office of Educ., 584 F.3d 821, 825-27 (9th Cir. 2009). "[T]o state a claim for retaliation, a plaintiff must show that he or she acted to protect his or her rights, that an adverse action thereafter was taken against him or her, and that a causal link exists between the two events." Smith v. Harrington, C 12-03533 LB, 2013 WL 132465, at *5 (N.D. Cal. Jan. 9, 2013) (citing Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 849 (9th Cir. 2004)). Temporal proximity between a protected activity and an adverse act may, under certain circumstances, raise an inference of a causal relationship. Pardi, 389 F.3d at 850.

Plaintiffs allege that, on October 13, 2011, the Mammens filed an amended grievance with "the Sacramento county disability compliance office alleging that CPS's actions and decisions regarding A.P.'s case were in violation of the ADA and Olmstead." TAC ¶¶ 43-44. That same day, two CPS workers called CCL to inform them of the Mammens' use of the wrapping technique. TAC ¶ 45. CCL subsequently initiated an investigation, visiting the Mammens' home on November 8, 2011. TAC ¶ 54.

In its June 9, 2014 Order, the Court made the following finding:

> "[B]ased on [identical allegations in the Second Amended Complaint], CCL conducted an investigation because of the County's communication not because of Plaintiffs' grievances. Moreover, CCL was statutorily required to make an onsite inspection of the home within 10 days after receiving a complaint. See Cal. Health and Saf. Code § 1538(a), (b), and (c).

9

>Therefore, even though there is temporal proximity, the allegations themselves negate the causal link."
>Order at 7.

After making this finding, the Court granted Plaintiffs leave to amend their complaint. Order at 8. However, the only relevant addition to the TAC is a single sentence that CCL's "wrongful citation was in retaliation for Plaintiffs' exercise of their rights under the ADA and Section 504 of the Rehabilitation act to advocate for interventions that were recommended by their medical provider." This conclusory allegation is insufficient to overcome the fact that Plaintiffs' (unchanged) allegations continue to negate the causal link: the CCL investigation was prompted by its communication with the County – and its statutory duty to investigate the potential violation – not by Plaintiffs' filing of a grievance. TAC ¶¶ 45, 54. Plaintiffs' suggestion that the communication between the County and CCL entailed anything other than a report of a potential personal rights' violation has no factual support in the TAC. Opp. at 13. Accordingly, Plaintiffs have failed to state a claim against CCL for retaliation in violation of the ADA and section 504 of the Rehabilitation Act.

   C.   Leave to Amend

Plaintiffs have had multiple opportunities to amend their complaint to properly state their claims against CCL and have repeatedly been unable to do so successfully. In opposing this motion to dismiss, Plaintiffs have also attempted to reargue legal theories that have been rejected by the Court. See Opp. at 13 (making an argument with regard to causation and temporal

10

proximity that was expressly rejected in the Court's June 9, 2014 Order). Providing Plaintiffs with yet another opportunity to amend their claims against CCL would be futile and, therefore, CCL's Motion to Dismiss Plaintiffs' fourth and fifth causes of action is GRANTED WITHOUT LEAVE TO AMEND. See, e.g., Rhodes v. Placer Cnty., 2011 WL 1302240 (E.D. Cal. Mar. 31, 2011) report and recommendation adopted, 2011 WL 1739914 (E.D. Cal. May 4, 2011) (dismissing claims with prejudice where the plaintiff had multiple prior opportunities to amend her complaint).

### III.  ORDER

The Court GRANTS WITHOUT LEAVE TO AMEND Defendant CCL's Motion to Dismiss Plaintiffs' fourth and fifth causes of action. As Defendant CCL is not named in any of the remaining causes of action in Plaintiffs' TAC, the matter will proceed without Defendant CCL:

IT IS SO ORDERED.

Dated: October 8, 2014

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE