UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

A.P. (a minor); ROBIN MAMMEN
and LARRY MAMMEN individually
and as Guardians ad litem for
A.P.,

　　　　　　　Plaintiffs,

　　　v.

COUNTY OF SACRAMENTO,
STEPHANIE LYNCH, LUIS VILLA,
MICHELLE CALLEJAS, DEBRA
WILLIAMS, CRAIG LARKIN, RENAE
RODOCKER,

　　　　　　　Defendants.

No.　2:13-cv-01588-JAM-DB

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

　　　Now before this Court is Defendants' motion for summary

judgment, ECF No. 80, which Plaintiffs oppose, ECF No. 94.　On

March 7, 2017, the parties appeared for hearing, after which the

Defendants' motion was taken under submission.　For the following

reasons, this motion is granted in part and denied in part.

///

///

///

///

1

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This case involves a dispute between the Mammens, a foster family, and the County of Sacramento ("County").  But, at its core, this case concerns A.P., a child diagnosed with autism and mental retardation.  A.P.'s occupational therapist and his pediatrician approved a "sensory diet," which refers to the type and amount of sensory input a person receives throughout the day.  See Jambeck Decl., ECF No. 95-1 ("Ex. A"), at COS 4638-40.  Designed to address A.P.'s "sensory processing deficits, poor self-regulation, self-injurious and aggressive behavior," this sensory diet includes "therapeutic listening," a music program with electronically modified music.  Id. at COS 4638.  It also includes "activities [that] provide proprioceptive based input (i.e., input "received through the muscles and joints [that] is generally calming to the body").  Id. (for instance, "crawling through fabric tubing," "being 'smashed' like a sandwich in beanbags," "jumping," and "pushing heavy [laundry] loads").

It is one activity in A.P.'s sensory diet in particular that triggered this lawsuit—the "wrapping" technique.  This technique involved wrapping A.P. like a "burrito" in stretchy fabric or a lightweight blanket.  See id.  Once the County learned Ms. Mammen wrapped A.P., the County prohibited the Mammens from using A.P.'s entire sensory diet for two weeks, after which the County banned only "wrapping."  See R. Mammen Dep. 93:18-94:21; Undisputed Material Fact ("UMF"), ECF No. 80-2, No. 100.  See also Ex. 24, ECF No. 86.

The Mammens and A.P. (collectively, "Plaintiffs") sue the County, Stephanie Lynch, Luis Villa, Michelle Callejas, Debra

2

Williams, Craig Larkin, and Renae Rodocker (collectively, "Defendants"). Third Am. Compl. ("TAC"), ECF No. 49. Plaintiffs bring several claims: (1) a <u>Monell</u> claim; (2) a § 1983 improper training and supervision claim; (3) § 1983 Fourteenth Amendment claims; (4) Rehabilitation Act § 504 claims; (5) ADA Title II claims; (6) an ADA intimidation claim; (7) an Unruh Civil Rights Act claim; (8) a negligence claim; and (9) an intentional infliction of emotional distress claim. TAC at 1.

## II. OPINION

### A. <u>Legal Standard</u>

A court may grant summary judgment when a party shows that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To withstand summary judgment, the non-movant must show that the parties dispute a fact that could affect the case's outcome. <u>See Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Summary judgment involves burden shifting. Initially, the moving party must show there is no genuine dispute as to material fact, though it need not introduce affirmative evidence. <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). This shifts the burden to the non-movant to go beyond the pleadings and show that triable factual issues exist. <u>See id.</u> at 324.

When surveying the record for factual disputes, a court must view the evidence in the light most favorable to the non-movant and must not make credibility findings. <u>See Anderson</u>,

3

1  477 U.S. at 255.  But a court need not adopt the non-movant's

2  version of events if it is unreasonable or if the record plainly

3  contradicts it.  See McLaughlin v. Liu, 849 F.2d 1205, 1208 (9th

4  Cir. 1988).

5      B.    Judicial Notice

6      Plaintiffs request judicial notice of Cal. Code Regs. tit.

7  22, sections 89372 and 89475.2.  Req. For Judicial Notice, ECF

8  No. 97.  If the requesting party provides necessary supporting

9  information, a court may judicially notice facts that reliable

10  sources can "accurately and readily" determine.  Fed. R. Evid.

11  201(b)(2), (d).  Here, the Court grants Plaintiffs' judicial

12  notice request because it concerns undisputed public records.

13      C.    Evidentiary Objections

14      In resolving a summary judgment motion, a court may

15  consider only admissible evidence.  See Fraser v. Goodale, 342

16  F.3d 1032, 1036 (9th Cir. 2003).  Plaintiffs argue Defendants

17  rely on 22 facts containing inadmissible hearsay and six lacking

18  foundation.  See Pls.' Resp. to Defendants' Undisputed Material

19  Facts, ECF No. 96.  Defendants do not meaningfully respond to

20  these objections.  See Reply, ECF No. 98.  But Plaintiffs'

21  objections are unavailing because they contest evidence that is

22  either immaterial or admissible.  See generally Burch v. Regents

23  of Univ. of California, 433 F. Supp. 2d 1110 (E.D. Cal. 2006).

24  The Court therefore overrules Plaintiffs' evidentiary

25  objections.

26      D.    Discussion

27          1.    Defendants Larkin and Callejas

28      All of Plaintiffs' claims against Defendants Larkin and

4

Callejas fail as a matter of law.  A defendant sued in his individual capacity faces liability only upon a sufficient showing that he personally participated in the challenged conduct.  See Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).  At hearing, Plaintiffs conceded they have no evidence that Defendants Larkin or Callejas participated in prohibiting A.P.'s sensory diet or otherwise had an active role in approving decisions challenged by Plaintiffs in this lawsuit.  See Hr'g Tr., ECF No. 100, at 4:13-14; 5:10-22.  Because Plaintiffs' evidence does not implicate either Defendant, the Court grants summary judgment on all claims against them.

> 2.  Abandonment

A party cannot revisit abandoned theories on summary judgment.  See Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009).  A party abandons an issue when it "has a full and fair opportunity to ventilate its views" on it and instead "removes the issue from the case."  Id. (internal citations and quotations marks omitted).

Defendants argue Plaintiffs abandoned "their claims that A.P. was improperly deprived prescription medication, institutionalized or threatened with institutionalization, discriminated against based on his race, denied adoption or that his adoption was unjustifiably delayed, and deprived required funding, or that the Mammen Plaintiffs' Fourteenth Amendment rights were violated."  Reply at 2.

Defendants are partially correct.  At hearing, Plaintiffs conceded to abandoning their § 1983 improper training and supervision claim (Second Claim) and Fourteenth Amendment

familial association claim (part of the Third Claim).  <u>See</u> Hr'g

Tr. at 6:17-7:2.  The Court grants summary judgment on these

claims.  But, because Plaintiffs never specifically brought race

discrimination or deprived funding causes of action, they did

not abandon those.  Also, Plaintiffs' assertions about A.P's.

prescription deprivation, institutionalization, and adoption

denial are not claims, but rather arguments to support claims.

<u>See generally</u> TAC.  This distinction is crucial.  <u>Ramirez</u>

focuses on the claims, not the arguments, parties abandon.  <u>Id.</u>

at 1026.  So, Plaintiffs may, as they did here, omit arguments

in their summary judgment opposition without abandoning a claim.

Defendants' abandonment argument as to these assertions fails.

### 3.   Official Capacity

When a plaintiff asserts a § 1983 claim against both a

municipal entity and a municipal official in his official

capacity, federal district courts routinely dismiss the latter

as duplicative.  <u>Harmon v. Cty. of Sacramento</u>, No. 12-cv-2758,

2016 WL 319232, at *18 (E.D. Cal. Jan. 27, 2016)(citing cases).

Plaintiffs here assert their first and third § 1983 claims

against the County and official-capacity defendants.  <u>See</u> TAC at

18, 20.  The Court dismisses Plaintiffs' official-capacity

claims brought in their first and third causes of action as

duplicative.

### 4.   Third Claim--Section 1983 Fourteenth Amendment

### a.   Substantive Due Process

The Fourteenth Amendment substantive due process clause

protects both "a foster child's liberty interest in social

worker supervision" and the child's liberty "from harm inflicted

by a foster parent."  See Tamas v. Dep't of Soc. & Health

Servs., 630 F.3d 833, 842 (9th Cir. 2010).  "Once the state

assumes wardship of a child, the state owes the child, as part

of that person's protected liberty interest, reasonable safety

and minimally adequate care . . . ."  Id. (internal citation

omitted).  So, once Defendants placed A.P. in foster care, he

enjoyed a special relationship with the state and held a

protectable interest against any harm his foster parents might

inflict.

Courts apply a "deliberate indifference" standard to

substantive due process challenges in the foster care context.

Henry A. v. Willden, 678 F.3d 991, 1000 (9th Cir. 2012).  To

violate due process, state officials must act with such

deliberate indifference to the child's liberty interest that

their actions "shock the conscience."  See Brittain v. Hansen,

451 F.3d 982, 991 (9th Cir. 2006) (internal citation omitted).

The deliberate indifference must be towards a known or obvious

risk of harm.  See Tamas, 630 F.3d at 844.  The plaintiff must

show (1) an objectively substantial risk of harm and (2) the

officials knew or should have known of that risk.  See id. at

1001 (citing Tamas, 630 F.3d at 844).  A plaintiff meets the

second element by showing either (a) the official actually

inferred that risk of harm or (b) a reasonable official would

have done so.  See id. (internal citation omitted).  If a risk

of harm is "obvious," courts can assume the official knew about

it.  See id. (internal citation omitted).

Here, Plaintiffs claim the County and Defendants Lynch,

Villa, Williams, and Rodocker violated A.P.'s substantive due

process rights.  See TAC at 20.  The Court grants summary judgment for Defendants as to the Mammens' due process claim because they lack standing:  Neither "de facto" parental status nor "prospective adoptive" parental status creates a cognizable liberty interest.  See Miller v. California, 355 F.3d 1172, 1176 (9th Cir. 2004); Olvera v. Cty. of Sacramento, 932 F. Supp. 2d 1123, 1142 (E.D. Cal. 2013) (citing California law).  Only A.P. may raise this claim.

A.P. alleges Defendants prevented him from receiving "appropriate care and treatment" when they "rushed to judgment" and "removed medically recommended therapies" that help his "behavior and development," which abridged "his constitutional right to care" for his "disabilities."  TAC ¶¶ 84-85, 96, 124.

Defendants argue they did not violate A.P.'s substantive due process rights because local law obligated them to intervene.  See Mem., ECF No. 80-1, at 8.  They cite Cal. Code Regs. tit. 22 section 89372(a)(8), the anti-restraint rule, which prohibits foster parents from placing a foster child "in any restraining device other than as specified in section 89475.2, Postural Supports and Protective Devices."  See Mem. at 8.

Defendants also cite County policy to defend their conduct, arguing that the policy also outlaws the Mammens' techniques.  See Ex. 52, ECF No. 80-4, at COS 4965-66 (prohibiting unconventional mental health treatments for children including "Rebirthing Therapy, Holding Therapy, Quiet Play Program, Strong Sitting Time Out, isolation, forced exercise, and other techniques which humiliate or cause emotional pain to

children"); Ex. 53, ECF No. 80-4, at COS 4967-68 (prohibiting unconventional mental health treatments involving "traditional psychoanalytic theories in conjunction with touch therapy"); Ex. 54, ECF No. 80-4, at COS 4969-70 (prohibiting "any coercive methods of restraint" or "other interventions utilizing adaptations of holding or touch"). Defendants concede that once the social workers realized A.P.'s sensory diet endangered him, they stopped his therapy altogether. See Hr'g Tr. at 17:16-18:10 (citing Ex. 24).

Yet A.P. contends that, by restricting his entire sensory diet (rather than just the "wrapping"), "Defendants were deliberately indifferent to the self-harm [he] inflicts without appropriate sensory interventions." See Opp'n at 8. Ms. Hawkins, A.P.'s occupational therapist, noted his self-harming tendencies when prescribing his sensory diet. See Ex. A at COS 4638 (explaining A.P. "frequently demonstrates behaviors indicative of sensory processing deficits, poor self-regulation, self-injurious and aggressive behaviors, and difficulty calming himself"). A.P.'s neurologic pediatrician approved and affirmed A.P.'s propensity towards self-harm. See id. at COS 4639-40 (advising A.P. should continue with his therapy as Ms. Hawkins prescribed "to prevent self harm," especially because "medications so far have failed to help him"). Yet, despite these known risks, the County prohibited A.P.'s recommended therapies entirely for a period of time. See Opp'n at 9.

The Court finds that A.P. has created a genuine dispute as to a material fact with respect to this claim. Defendants knew about A.P.'s serious medical needs. Ex. A at COS 4590 (CAPS

Short-Term Assessment), COS 4638 (Hawkins's letter recommending sensory diet), COS 4639-40 (pediatrician's letters approving sensory diet). But, rather than prohibiting only wrapping (the treatment they claimed jeopardized A.P.'s safety), Defendants restricted his entire sensory diet for nearly two weeks. See R. Mammen Dep. 93:18-94:21 (testifying that defendants Lynch, Williams, and Rodocker told Mammens they could not use sensory diet, and Williams and Rodocker reiterated this during home visit); UMF No. 100 (Williams and Rodocker home visit with Mammens on 9/23/2011). See also Ex. 24 (on 10/6/2011 Defendants inform Ms. Mammen, for the first time, she may use sensory diet except for wrapping).

This raises a triable issue regarding substantive due process concerns. Both parties discuss Tamas, a Ninth Circuit case applying the deliberate indifference standard to foster children. Although Tamas establishes the relevant legal standard, it involved child molestation—a concern not at issue here. The more relevant case is Willden, which neither party cites. There, the Ninth Circuit analyzed a County's alleged failure to provide foster children adequate medical care under Tamas's deliberate indifference standard. Willden, 678 F.3d at 1000-01.

In Willden, several foster children sued the state, the county, and various state and county officials under § 1983 for violating their substantive due process rights. See id. at 996. The foster children alleged, in part, the defendants did not give them necessary medical care. Id. at 997. Indeed, one foster child "became seriously ill with an impacted colon," yet

"the County failed to approve a colonoscopy or other treatment measures, despite repeated requests from [the foster child's] doctor and his foster parent." Id. Applying Tamas, the Ninth Circuit reversed the district court's dismissal, concluding that plaintiffs stated a claim because "[a] reasonable official would have understood that failing to authorize [the foster child's] medical treatment despite knowledge of his serious illness and repeated requests from his treating physician amounted to deliberate indifference to a serious medical need." Willden, 678 F.3d at 1001.

Despite the differences in procedural posture (pleading in Willden, summary judgment here) and duration without treatment (months in Willden, 13 days here), Willden remains instructive: A foster child states a claim under the deliberate indifference standard when he alleges the municipality knew about his serious medical condition yet failed to provide him adequate medical care. See id. at 1001. A.P. makes this showing. He offers evidence that Defendants knew about his self-harming behavior. See Ex. A at COS 4638-40. And he offers evidence that Defendants prohibited his entire sensory diet. See R. Mammen Dep. 93:18-94:21; UMF No. 100. See also Ex. 24.

In short, A.P. has created a triable issue about whether Defendants were deliberately indifferent to the self-harm A.P. inflicts without his sensory diet. As to the first "deliberate indifference" prong, A.P. has submitted sufficient evidence showing there was an objectively substantial risk of harm. As to the second prong, "[a] reasonable official would have understood" that removing A.P.'s entire sensory diet for two

weeks, despite knowing about his serious condition and repeated requests from his foster parents to use this diet, "amounted to deliberate indifference to a serious medical need." See Willden, 678 F.3d at 1001.  At minimum, a reasonable juror could find for Plaintiffs on this claim.  The Court therefore denies summary judgment on A.P.'s substantive due process claim as to defendants Rodocker, Lynch, and Williams.

But the Court grants summary judgment on this claim as to defendant Villa.  A.P. sues Villa in his individual capacity, but offers no evidence that Villa personally participated in the alleged misconduct.  That is because none exists.  The record shows Villa was involved only with enforcing the County's anti-wrapping policy, not the decision to prohibit A.P.'s sensory diet.  Defendant Lynch first told Villa about A.P.'s case on October 13, 2011, one week after Defendants informed Ms. Mammen she could use A.P.'s sensory diet except for wrapping.  See Ex. A at COS 4635.  See also Ex. 24.  So, A.P.'s substantive due process claim against Villa based on A.P.'s two-week total sensory diet deprivation fails as a matter of law.

And, finally, the Court grants summary judgment for the County on this claim because it duplicates A.P.'s Monell claim. See infra Part II.D.5.

b.   Equal Protection

A.P. also brings a Fourteenth Amendment § 1983 claim against all Defendants under an equal protection theory.  See TAC at 20-21.  He alleges Defendants stalled his adoption and "recommended keeping him from permanency, while his sister's matter was approved for permanency" and that "[t]here was no

non-discriminatory reason for this disparate treatment." Id.
¶¶ 119-20.

The equal protection clause prohibits any state from denying any person within its jurisdiction the equal protection of the laws, see U.S. Const. amend. XIV, § 1, and requires that the state treats all persons similarly situated alike, see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). For equal protection claims based on mental disabilities, courts assess whether the government's alleged disparate treatment was "rationally based" on a legitimate state interest. See id. at 440-42.

Defendants argue A.P.'s disparate treatment claim fails because A.P. (given his severe disability) is not "similarly situated" to his sister. See Mem. at 9. But Plaintiffs maintain that A.P. and his sister were similarly situated because both were the Mammens' foster children, but only his sister received unrestricted medical services. See Opp'n at 10.

The Court agrees with Defendants. First, A.P. and his sister were not similarly situated. Both were foster children in the Mammen home, but A.P.'s medical condition meaningfully differed from his sister's—and Plaintiffs recognize this. See Jambeck Decl., ECF No. 95-6 ("Ex. F"), at COS 2084 ("MP is a 6 year old female . . . AP is a 5 year old male with special needs."). Second, the government survives rational basis scrutiny. Defendants need only show a legitimate government interest to support A.P.'s disparate treatment. They have done just that. Defendants restricted A.P.'s medical services for his own safety. See Mem. at 10-11 (discussing anti-wrapping

13

rule).  Plaintiffs have not shown that concern for foster

children's safety is an illegitimate government interest.  They

cite only McCollum v. California Dep't of Corrs. & Rehab.,

involving a prison's chaplaincy program.  647 F.3d 870 (9th Cir.

2011).  This factually distinct case does not advance

Plaintiffs' argument.  And their evidence (Ms. Hawkins's

recommended sensory diet and A.P.'s pediatrician's approval)

does not diminish the "rational relationship between the

disparity of treatment and some legitimate governmental

purpose."  See Garret v. Bd. of Trs. of the Univ. of Alabama,

531 U.S. 356, 367 (2001) (emphasizing "the result of Cleburne is

that States are not required by the Fourteenth Amendment to make

special accommodations for the disabled, so long as their

actions toward such individuals are rational").

Simply put, because Plaintiffs do not "negative any

reasonably conceivable state of facts that could provide a

rational basis classification," the Court grants Defendants'

motion for summary judgment on A.P.'s equal protection claim.

### 5.   First Claim--Monell

A.P. brings a Monell claim against both the County and the

individual County employees.  See TAC at 18.  But a Monell claim

can survive only against the County.  See generally Monell v.

Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

Here, Plaintiffs cite no authority supporting their theory that

these individual defendants may face Monell liability.  The

Court therefore grants summary judgment on A.P.'s Monell claim

as against Defendants Lynch, Rodocker, Villa, and Williams.

To succeed on a Monell claim against a county, a plaintiff

14

must show the county had a policy or custom that violated his federally protected rights.  Id. at 694-95.  So, a plaintiff must show (1) the county deprived him of a federal constitutional right; (2) the county had a policy; (3) the policy amounted to deliberate indifference to his constitutional right; and (4) the policy is the moving force behind the constitutional violation.  See City of Canton v. Harris, 498 U.S. 378, 389-91 (1989).  A plaintiff may satisfy the second element by showing (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority."  See City of St. Louis v. Praprotnik, 485 U.S. 112, 123, 127 (1988) (internal citation omitted).  See also Pembaur v. City of Cincinnati, 475 U.S. 469, 481—83 (1986).

A.P. has done that.  As discussed above, he raises a factual dispute about whether the County's enforcing its anti-wrapping policy (which restricted A.P.'s sensory diet for nearly two weeks) violated his substantive due process rights.  Thus, A.P. not only meets his initial burden to prove this claim, but also rebuts Defendants' arguments against it.  The Court denies summary judgment on A.P.'s Monell claim against the County.

### 6.    Fourth Claim--Rehabilitation Act § 504

A.P. brings this claim against the County, alleging disability discrimination and retaliation.  See TAC at 23-24.

a.   <u>Disability Discrimination</u>

Rehabilitation Act § 504 prohibits disability discrimination in all federally funded programs.   <u>See</u> 29 U.S.C. § 794.   To establish a § 504 violation, a plaintiff must show (1) he is handicapped; (2) he is otherwise qualified for the benefit or services sought from the organization; (3) he was denied the benefit of services because of his handicap; and (4) the benefit program is at least partially federally funded. <u>See Lovell v. Chandler</u>, 303 F.3d 1039, 1052 (9th Cir. 2002). Equally important, failing to reasonably accommodate can amount to discrimination under the Act.   <u>See Olmstead v. L.C.</u>, 527 U.S. 581, 592 (1999); <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1154 (9th Cir. 2002).   A public entity must make reasonable modifications to accommodate disabilities unless doing so would fundamentally alter the nature of the service, program, or activity. <u>Olmstead</u>, 527 U.S. at 592.

A.P. alleges the County violated the Rehabilitation Act because it (1) lacked an <u>Olmstead</u> Plan to ensure people with disabilities receive services in the least restrictive environment;[1] (2) used A.P.'s severe disability as a factor in his adoptability; (3) failed to investigate treatment methods autism experts prescribed before restricting A.P.'s entire sensory diet; (4) prohibited A.P. from receiving appropriate services, worsening his condition; and (5) interfered with Ms.

---

[1] In <u>Olmstead</u>, the Supreme Court held that states must not unnecessarily segregate people with disabilities, ensuring that these individuals receive services in the most integrated setting appropriate to their needs.   <u>See id.</u> at 599 (explaining that the "least restrictive environment" means a setting least restrictive to the disabled person's personal liberty).

Mammen's attempts to give A.P. therapeutic services.  See TAC
¶ 131.

In support of its motion on this claim, the County argues
that although it lacks a policy entitled "Olmstead", the County
incorporated Olmstead's requirements by always keeping A.P. in
the least restrictive environment available.  See Mem. at 15-16.
In response, A.P. maintains the County failed to engage in an
interactive process with the Mammens that would have allowed for
reasonable accommodation.  See Opp'n at 12.  In reply, the
County reiterates that it could not accommodate A.P.'s needs
(i.e., allow wrapping) without violating the law.  See Reply at
3.

The Court agrees with the County.  First, it is undisputed
A.P. always remained in the least restrictive environment.  See
UMF No. 26 (A.P. placed in Mammen foster home); UMF No. 31
(County never removed A.P. from Mammens' custody); UMF No. 32
(A.P. never placed in institution); UMF No. 155 (finalized
adoption with Mammens).  Second, the Court finds the County
sufficiently interacted with Plaintiffs:  Several County
officials met with the Mammens to discuss A.P.'s sensory diet.
See UMF No. 100 (Rodocker and Williams's Mammen home visit); R.
Mammen Dep. 93:18-94:21 (defendants Lynch, Williams, and
Rodocker told Mammens they could not use sensory diet).  See
also UMF Nos. 102-103 (Team Decisional Meeting with Mammens
discussing wrapping technique); Ex. 24 (state court hearing
where Ms. Mammen informed she could use sensory diet except
wrapping); UMF No. 115 (parties meet and confer regarding
wrapping technique and other protocols in A.P.'s sensory diet

subject to Juvenile Court's order).

And, finally, Plaintiffs produce no evidence that a reasonable accommodation was possible. Plaintiffs rebuke Defendants' reliance on California's anti-restraint rule, arguing that a potential exception applies: Namely, that the wrapping technique is a "postural support" or "protective device." See Opp'n at 12 (citing exception to California's anti-restraint rule).

Not so. The wrapping technique is not a postural support because wrapping involves "tying, depriving, or limiting a 'child' from use of hands or feet." Cal. Code Regs., tit. 22, section 89475.2(1) (describing what a postural support is not). Nor is the wrapping technique a "protective device" because protective devices cannot prohibit mobility. Cal. Code Regs., tit. 22, section 89475.2(2). These definitions also bolster Defendants' argument that they did not deny Plaintiffs' request because of A.P.'s disability; they denied this treatment because of safety concerns and clearly defined state law restrictions. In sum, the Court grants summary judgment on A.P.'s § 504 disability discrimination claim against the County.

> b. Retaliation

Although A.P. brought a § 504 retaliation claim, he did not address it in opposition. See generally Opp'n (discussing only disability discrimination). At hearing, Plaintiffs' counsel maintained that the retaliation claim standard mirrors that of A.P.'s disability discrimination claim, and so, to the extent the County retaliated against the Mammens, it also retaliated against A.P. See Hr'g Tr. at 8:24-9:12. This argument is

1   without merit.  Because Plaintiffs cite no authority or evidence

 2   supporting retaliation against A.P.—the only plaintiff bringing

 3   a § 504 retaliation claim—the Court grants summary judgment for

 4   the County on this claim.

 5              7.    Fifth Claim--ADA Title II

 6        A.P. also brings an ADA Title II claim against the County,

 7   alleging disability discrimination and retaliation.  TAC at 24-

 8   26.

 9              a.    Disability Discrimination

10        A.P.'s ADA Title II disability discrimination claim does

11   not survive summary judgment.  To establish an ADA Title II

12   violation, a plaintiff must show (1) he has a qualifying

13   disability; (2) defendants excluded him from or discriminated

14   against him within a public service, program, or activity; (3)

15   because of his disability.  See Lovell, 303 F.3d at 1052.  See

16   also 42 U.S.C. § 12131.  Courts apply the same analysis to § 504

17   disability discrimination claims as ADA Title II disability

18   discrimination claims.  See Vinson, 288 F.3d 1145, 1152 n.7

19   (explaining "no significant difference in the analysis of rights

20   and obligations created by" the ADA and § 504).  Because A.P.'s

21   § 504 claim does not survive summary judgment, his ADA Title II

22   discrimination claim fails as well.  See Vinson, 288 F.3d at

23   1152 n.7.  The Court grants summary judgment for the County on

24   this claim.

25              b.    Retaliation

26        A.P. brings an ADA retaliation claim against the County.

27   For the same reasons his § 504 retaliation claim fails, A.P.'s

28   ADA Title II retaliation claim also fails.  The Court grants

                                  19

1  summary judgment on this claim.

2          8.    Seventh Claim--Unruh Act

3      A.P. brings an Unruh Civil Rights Act claim against the

4  County.  See TAC at 27 (citing Cal. Civ. Code § 51).  Because

5  A.P.'s ADA Title II claim fails to survive summary judgment, his

6  derivative Unruh Act claim also fails.  See Cal. Civ. Code

7  § 51(f) (explaining that violating the ADA also violates the

8  Unruh Act).

9          9.    Sixth Claim--ADA Intimidation

10      The Mammens bring an ADA intimidation claim against the

11  County and defendant Lynch, alleging that, after the Mammens

12  filed an ADA grievance complaint, see TAC ¶ 149, these

13  defendants intimidated the Mammens by threatening to remove all

14  children from the Mammen home and threatening to stop A.P.'s

15  adoption, see TAC ¶¶ 69-70, 72, 123.  The ADA's intimidation

16  provision prohibits the coercion, intimidation, or interference

17  of any individual's participation in or enjoyment of any right

18  that the ADA chapter grants or protects.  See 42 U.S.C.

19  § 12203(b).

20              a.    Lynch

21      Defendants contend that the Mammens' intimidation claim

22  fails against Lynch because "[t]here is no individual liability

23  for retaliation under the ADA or the Rehabilitation Act," Mem.

24  at 17, and so "the retaliation claim as asserted against

25  Stephanie Lynch in her individual capacity must fail," id. at

26  18.

27      Defendants' argument is irrelevant.  First, Defendants

28  mischaracterize the Mammens' claim as "retaliation" (rather than

intimidation).  The Mammens did not bring a retaliation claim against Ms. Lynch:  A.P. brought a retaliation claim against the County, and the Mammens brought an intimidation claim against the County and Lynch.  <u>See</u> TAC at 23-26.  Second, Defendants hinge their argument on non-binding cases regarding individual liability for retaliation claims.  <u>See</u> Mem. at 17-18.  That issue is not before this Court.  The Ninth Circuit has not addressed whether individual liability even applies in ADA and § 504 <u>retaliation</u> claims, <u>see Brenneise v. San Diego Unified Sch. Dist.</u>, No. 08-cv-28, 2009 WL 1308757, at *8 (S.D. Cal. May 8, 2009) (admitting that the Ninth Circuit has not addressed this issue), let alone whether individual liability applies to ADA <u>intimidation</u> claims.  Nor do Defendants explain why the Court should extend non-binding ADA retaliation claim precedents to the ADA intimidation context here.  In short, Defendants have not met their initial burden to show the Mammens' intimidation claim against Lynch fails as a matter of law.  The Court denies summary judgment on this claim against Lynch.

> b.    <u>County</u>

Defendants also contend this ADA intimidation claim fails against the County, explaining that Defendants had legitimate, non-pretextual reasons for their conduct.  <u>See</u> Mem. at 18.

Again, because Defendants mischaracterize the Mammens' claim as retaliation (rather than intimidation), Defendants apply the wrong standard.  <u>Brown v. City of Tucson</u> makes clear that the Fair Housing Act—not Title VII—is the better textual analogue for ADA intimidation claims.  336 F.3d 1181, 1188-91 (9th Cir. 2003) (denying summary judgment on ADA intimidation

claim after concluding district court erred in applying McDonnell-Douglas framework).  Under Brown, when a plaintiff brings an ADA intimidation claim, the plaintiff must show he "suffered a distinct and palpable injury" or "direct harm" because of coercion, intimidation, threats, or interference. See id. at 1192-93.

Defendants bear the initial burden of discrediting a claim— only then does the Court scrutinize the evidence supporting that claim.  See Celotex Corp., 477 U.S. at 323-24.  Because Defendants erroneously characterize the Mammens' claim as retaliation and cite the wrong standard, they do not meet their initial burden, and the Court need not scrutinize the evidence as to this claim.  The Court denies summary judgment on the Mammens' ADA intimidation claim as to the County.

### 10.  Eighth Claim--Negligence

A.P. alleges all Defendants negligently breached their duty to care for him "when they deprived him of prescribed services, interfered with his parents' ability to care for him and kept him from being part of a permanent family."  TAC ¶ 160. Although the TAC lists all Plaintiffs on this claim, Plaintiffs' counsel clarified at hearing that this is only A.P.'s claim. See Hr'g Tr. at 10:10-16.

Defendants attempt to invoke statutory immunity under section 820.2.  See Mem. at 20-21.  See also Cal. Gov. Code § 820.2 ("[A] public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him.").  This immunity also applies to public entities.  See Cal. Gov.

Code § 815.2(b).  Defendants argue immunity applies here because a social worker's pre-adoption work is discretionary activity.  See Mem. at 21 (citing Ronald S. v. Cty. of San Diego, 16 Cal. App. 4th 887, 897 (1993)).

The Court disagrees.  California courts "rejected a semantic inquiry into the meaning of discretionary and based [their] approach on the reason or purpose for granting immunity to the public employee and entity in this area."  Elton v. Cty. of Orange, 3 Cal. App. 3d 1053, 1057 (1970).  Recognizing the fine "line between the immune 'discretionary' decision and the unprotected ministerial act," Elton concluded that section 820.2 immunizes public employees' discretionary acts and omissions only if they "involve basic policy decisions."  Id. at 1057-58.  Elton also held that immunity applies only where the public employee consciously exercised discretion while committing the allegedly negligent act.  See id. at 1058.

This case is analogous to Elton because the gravamen of Plaintiffs' TAC does not concern pre-adoption work per se; it concerns A.P.'s care after Defendants placed him in the Mammens' foster home.  See generally TAC.  So, although the initial decision to classify a child as a dependent child is discretionary, the actual placement of the child in a foster home and the administration of her care therein do not rise to the level of policy decisions protectable by statutory immunity.  See Elton, 3 Cal. App. 3d at 1058.  By contesting Defendants' administration of A.P.'s care after they placed him in the Mammen foster home, Plaintiffs raise a triable issue as to section 820.2's applicability.  The Court denies summary

1    judgment on A.P.'s negligence claim.

2              11.   Ninth Claim--Intentional Infliction of Emotional

3                    Distress

4         Plaintiffs ninth and final claim is for intentional

5    infliction of emotional distress ("IIED") against all Defendants.

6    TAC at 29.  They allege Defendants "intentionally and maliciously

7    sought to place A.P. in an institutional setting without any

8    regard for his bond with his de facto parents" and "falsely and

9    maliciously accused the Mammens of neglecting and abusing A.P. .

10   . . caus[ing] emotional duress and stress."  TAC ¶¶ 167, 169.

11        Defendants argue their reasonable and appropriate response

12   to their concerns about A.P.'s safety does not amount to

13   "extreme" or "outrageous" conduct.  See Mem. at 21.  Plaintiffs

14   disagree, relying primarily on Ms. Mammen's testimony about the

15   County employees' "accusations and unfounded statements and

16   threats to remove all children if the Mammens would not sign the

17   corrective action plans."  Opp'n at 18-19 (internal citations

18   omitted).

19        Defendants arguments are more persuasive.  First, A.P.'s

20   claim fails because the record shows Defendants directed their

21   allegedly outrageous conduct towards the Mammens, not towards

22   A.P.  See Opp'n at 18-19 (discussing only what Defendants said to

23   the Mammens).  Second, the Mammens' claim fails because they

24   offer no case law showing Defendants' reach the high standard of

25   "extreme or outrageous conduct."  See id. (citing only the

26   elements of an IIED claim).  So, because Defendants illuminate a

27   lack of evidence to support this claim, and Plaintiffs do not

28   meet their burden to rebut this showing, the Court grants

Defendants' motion on this claim.  See Celotex Corp., 477 U.S. at
323-24.

                            III.   ORDER

     For the reasons set forth above, the Court GRANTS in part
and DENIES in part Defendants' motion for summary judgment.
Summary judgment is granted on all claims and as to defendants
Larkin and Callejas with the exception that the following claims
will proceed to trial:

- A.P.'s Monell claim against the County only (First
  Claim);
- A.P.'s substantive due process claim as to Defendants
  Rodocker, Lynch, and Williams only (Third Claim);
- The Mammens' ADA intimidation claim as against the County
  and Defendant Lynch (Sixth Claim);
- A.P.'s negligence claim against all Defendants Lynch,
  Rodocker, Villa, Williams and the County (Eighth Claim).

     IT IS SO ORDERED.

Dated: April 25, 2017

                                    _____
                                    JOHN A. MENDEZ,
                                    UNITED STATES DISTRICT JUDGE